LAW OFFICES OF
# LONDON & ROBIN

IRA D. LONDON
AVROM ROBIN
———

99 PARK AVENUE
SUITE 2600
NEW YORK, NEW YORK 10016
TEL: 212-683-8000
FAX: 212-683-9422
EMAIL: iradlondon@aol.com
avrom@mindspring.com

<u>VIA ECF and EMAIL</u>

April 3, 2020

The Honorable Laura Taylor Swain
United States District Judge
United State Courthouse
500 Pearl Street
New York, NY 10007

                Re:  <u>United States v. Beirne Lowry</u>
                     18 – CR – 882 – 04 (LTS)

Dear Judge Swain:

      I write today to update your Honor on the status of this case, and to make an emergency motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A) on behalf of my client, Beirne Lowry. My request is that you modify his sentence to time served, order the B.O.P. to release him immediately, and that you add to his supervised release a condition that immediately upon his release from custody he self - quarantine at home for a period of 14 days. This request will have a minimal effect on Mr. Lowry's term of incarceration. In total effect it will substitute 2 weeks of home confinement instead of an additional 2 weeks incarceration at Fort Dix, at this dangerous time for jailed defendants because of the COVID -19 crisis.  Otherwise his sentence will be unchanged.

1. <u>Background</u>

      On August 1, 2019 at the sentencing hearing for Mr. Lowry your Honor expressed the intention that Mr. Lowry be given the maximum permissible time in community confinement on his total sentence of 8 months in custody. (Sentence transcript, ECF doc. # 128).

      On August 6, 2019 the Judgment was docketed and included the following recommendation from your Honor to the Bureau of Prisons: that the defendant be designated to serve the maximum permissible portion in a residential reentry center in the NYC metropolitan area. (Judgment, ECF doc. # 123).

      On October 29, 2019 Mr. Lowry self – surrendered to his designated institution, FCI Fort Dix. As a first time and non – violent offender, he was placed in the federal prison camp at that facility. In the 5 months Mr. Lowry has served there, he has had no disciplinary infractions, and

Hon. Laura Taylor Swain
April 3, 2020
Page 2 of 4

has been a model prisoner, helping other prisoners learn skills in the arts including illustration and music. As an accomplished musician, he has played in the camp band.

On March 26, 2020 Mr. Lowry informed me via CorrLinks email that he was recommended by his Fort Dix Unit Team (counselor and/or case manager) for release from the Fort Dix camp directly to home confinement on April 7, 2020, which would have meant that he would have served 5 months in custody at the institution, and would serve the remaining 3 months of his sentence on home confinement. The obvious subtext of that recommendation is that Mr. Lowry had a good behavior record at Fort Dix. Mr. Lowry also wrote that his facility, Fort Dix, had not received final approval on that request.

Also on March 26, 2020 I emailed Adam Johnson, Esq., now deputy Regional Counsel for the B.O.P. in the Philadelphia office for the Northeast region, asking for some clarification on Mr. Lowry's email. Mr. Johnson responded immediately that he would check with the R.R.M. (Residential Reentry Management field office in Brooklyn), the office that gives final approval on these issues.

Today, April 3, 2020 I received an email from Mr. Lowry that he had gotten final approval for release to home confinement on April 21, 18 days from now, but that Fort Dix staff told him he would be taken out of the camp, in shackles, on April 6 to the SHU (special housing unit, or "segregation") at the low facility and quarantined there for 14 days before he was released. Mr. Lowry reports that the whole camp population has already been on extremely tight restrictions for at least two weeks, thus calling into question the purpose and utility of another two weeks isolation in SHU.

However, earlier, on March 26, 2020 Attorney General William Barr directed the Bureau of Prisons "to place any inmate to whom you grant home confinement in a mandatory 14-day quarantine period before that inmate is discharged from a BOP facility to home confinement." (Memorandum from the Attorney General for the Director of Bureau Prisons, https://www.justice.gov/file/1262731 ).

My understanding is that this directive from the Attorney General is the reason Mr. Lowry is being sent to SHU for two weeks instead of being released to home confinement on April 7. I submit that there are unintended and problematic consequences of the Attorney General's memo, which I will explain below.

2. <u>18 U.S.C. § 3582(c)(1)(A) motion for Compassionate Release</u>

Mr. Lowry now moves for a reduction of his term of imprisonment under the federal compassionate release statute because he is at risk of contracting and experiencing serious complications from Covid-19 the longer he remains at Fort Dix.

Mr. Lowry is in a high - risk group, both because of his age – he will be 61 in just 3 months – and a preexisting medical condition: Mr. Lowry is among those in the general population that is most prone to respiratory infections. His wife reported to me today that his

Hon. Laura Taylor Swain
April 3, 2020
Page 3 of 4

long time primary care physician, Dr. Marsh, has had to prescribe Mr. Lowry an asthma inhaler on several occasions when an ordinary cough progressed to bronchitis. This condition did not come up in the presentence interview, because it hadn't happened recently in the time period when the PSR was done, but it has been a long - standing issue for Mr. Lowry. Repeated bronchitis may be a sign of COPD, which is clearly a big risk factor with COVID: https://www.mayoclinic.org/diseases-conditions/bronchitis/symptoms-causes/syc-20355566.

　　　　Keeping Mr. Lowry in quarantine for two whole weeks in a federal prison, with recirculated air, poor food, no access to fresh air and exercise, and worst of all close and constant contact with others – even in SHU – only increases the probability that Mr. Lowry will get infected, rather than decreasing it. His wife Susan also told me today that she has set up their apartment in Manhattan, and stocked it with food and supplies so that Mr. Lowry can remain there for 14 days without going out.  She will return to their other house upstate where she is staying, after she delivers him to their Manhattan apartment.

　　　　Mr. Lowry just reported to me again via email that the whole camp is on lockdown for 14 days, with the Correctional Officers wearing personal protective equipment including gowns, gloves, and masks. Surely Mr. Lowry would be safer at home, by himself, than he is in this obviously contaminated prison setting.

　　　　Ordinarily, a prisoner's application under § 3582(c)(1)(A) for a sentence modification under the compassionate release statute must first be submitted by the prisoner to the Warden at his facility. Only after the expiration of a 30 day period with no response from the Warden, or exhaustion of administrative remedies like internal appeal by the prisoner to the BOP, whichever comes first, can the prisoner bring his application to the Court.

　　　　However, these are not ordinary times. First, it wasn't until today that I learned that Mr. Lowry would not be released to home confinement on April 7, as initially requested by his Unit Team at Fort Dix. Instead, he would be held at Fort Dix until April 21, and released on that date only after a 14 day quarantine in the terrible conditions in SHU at Fort Dix.

　　　　Just two days ago SDNY District Court Judge Analisa Torres held that the requirement to exhaust "the administrative process can be waived in light of the extraordinary threat posed – in his unique circumstances – by the COVID – 19 pandemic…this threat also constitutes an extraordinary and compelling reason to reduce [defendant's] sentence to time served."  United States v. Wilson Perez, 17 Cr, 513-3 (AT), (ECF # 98, filed 04/01/20).

　　　　Judge Torres, in her Order cited immediately above, wrote that "[e]ven where exhaustion is seemingly mandated by statute …, the requirement is not absolute." Washington v. Barr, 925 F.3d 109, 118 (2d Cir. 2019) (citing McCarthy v. Madigan, 503 U.S. 140, 146-47 (1992).  There exist exceptions to this mandate, including undue delay; even if relief were requested now, it would be moot here by the time the 14 days of additional quarantine had passed; and finally, Mr. Lowry would be unduly prejudiced by such delay.

Hon. Laura Taylor Swain
April 3, 2020
Page 4 of 4

Here, time is of the essence, in this situation where things are changing on a daily basis, and Mr. Lowry is confined at a facility clearly unprepared and probably in any event unable to adequately deal with the threat posed by COVID – 19. As in Perez, even a few weeks delay carries the risk of serious health consequences for Mr. Lowry. (Perez at 4.) Delay would amount to denying relief altogether to Mr. Lowry because of the tight timetable in operation.

In a similar decision in the U.S. District Court for the District of Connecticut, District Judge Janet Bond Arterton granted the defendant's motion for compassionate release, and also waived the exhaustion requirement. United States v. Latrice Colvin, 3:19cr179 (JBA) (ECF # 38, filed 04/02/20).

3. Position of the United States Attorney for the Southern District of New York

I spoke by phone earlier today with A.U.S.A. Nathan Rehn, who has worked on this case from the beginning. I explained to Mr. Rehn what the issues are here, and the basis for my requested relief, and what relief I was requesting. Mr. Rehn authorized me to inform the Court that the government's position is that the law requires mandatory exhaustion of administrative remedies on compassionate release motions such as this one, and that therefore the government is opposed to this motion.

4. Conclusion

I request that your Honor Order that Mr. Lowry's sentence by modified to time served pursuant to 18 U.S.C. § 3582(c)(1)(A) and that the Warden at Fort Dix release him immediately up receipt of an Order to do so.

If your Honor grants my request, the net effect will be that Mr. Lowry serves 5 months incarcerated in a BOP facility and 3 months in home confinement, instead of 5 ½ months incarceration and 2 ½ months in home confinement, and that his 14 days of additional quarantine happen in his home, rather than in the SHU at Fort Dix.

I further request that Mr. Lowry's supervised release special conditions be amended to add a condition that he self – quarantine at home for a period of 14 days immediately upon his release.

In keeping with Chief Judge McMahon's series of recent Orders regarding court procedure during the COVID -19 crisis, I am working remotely. I am available via email, cell phone, Skype and Zoom for conferences in this matter.

Very truly yours,

AVROM ROBIN

copy via email:		A.U.S.A. Nathan Rehn